## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANET L. SCHMIDT,** )<br>  **14 Fourth St., NE** )<br>  **Washington, D.C.  20002** )<br> )<br>         **Plaintiff,** )<br> )<br>   **v.** )<br> )<br>**ELAINE L. CHAO,** )<br>  **Secretary of Labor** )<br>  **U.S. Department of Labor** )<br>  **200 Constitution Avenue, N.W.,** )<br>  **Washington, D.C. 20210,** )<br> )<br>         **Defendant.** )<br>                          ) | **Civ. Action No.** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1.)     This is an action by plaintiff, Janet L. Schmidt, a Pension Law Specialist with the Department of Labor, Employee Benefits Security Administration, Office of Exemption Determinations, whose successful career and health have been placed in jeopardy by the agency's interference with her right to reasonable accommodation, its refusal to engage in the interactive accommodation process, as well as its discrimination and retaliation against her.

2.)     This case seeks redress for defendant's failure to reasonably accommodate or to fully accommodate plaintiff's disability (permanent and severe adhesive disease of the small and large intestines), for its outrageous intrusion into her private medical affairs as a condition of engaging in the interactive accommodation process, for placing plaintiff in a non-pay status during the accommodation process, for refusing to timely engage in the interactive accommodation process, and for the other discrimination and retaliation that defendant visited

1

upon plaintiff on account of her disability and her protected EEO activity.  It arises under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et seq.; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

3.)    Defendant unlawfully discriminated and retaliated against Ms. Schmidt and failed to reasonably accommodate her disability by improperly requiring her to produce extensive, highly personal medical information to her first-level supervisor in order to continue receiving a previously-approved reasonable accommodation and as a condition of engaging in the interactive accommodation process; forcing plaintiff into a non-pay status; periodically revoking plaintiff's accommodation; and repeatedly shifting and ultimately limiting and conditioning Ms. Schmidt's accommodation in such a way that prevents Ms. Schmidt from earning her full salary.

4.)    To remedy these and other unlawful actions, plaintiff seeks: a.) a declaration that defendant unlawfully subjected her to discrimination and retaliation and failed to reasonably accommodate her disability; b.) an injunction reinstating plaintiff's reasonable accommodation, including the ability to work full time from home with flexible hours, awarding her backpay, benefits and lost bonus payments, reassigning plaintiff to a non-hostile work environment, and enjoining defendant from further violations of plaintiff's civil rights; c.) record correction to change her performance appraisal for Fiscal Year 2004 from "effective" to "highly effective" plus backpay commensurate with a higher rating; d.) compensatory damages; and e.) an award of her attorneys' fees and costs.

**Parties, Jurisdiction, And Venue**

5.)    Plaintiff, Janet L. Schmidt, is and was at all times relevant to this Complaint employed by the Department of Labor, Employee Benefits Security Administration, Office of Exemption Determinations as a GS-12 Pension Law Specialist.  Ms. Schmidt suffers from severe

and permanent adhesion disease of the small and large intestines, a disability that substantially limits one or more of her major life activities. She has previously participated in protected EEO activity, by filing one or more EEO complaints on her own behalf and by providing information in support of another employee's EEO complaint.

6.)     Defendant Elaine L. Chao is the Secretary of Labor and as such is the official who heads the U.S. Department of Labor ("DOL"), of which the Employee Benefits Security Administration ("EBSA") is a part. The EBSA employs plaintiff and engaged in the acts of discrimination and retaliation that are the subjects of this action. Defendant is sued in her official capacity only.

7.)     Jurisdiction of this Court is based upon 28 U.S.C. §1332, 29 U.S.C. §794a(a)(1), and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)). Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because defendant's acts occurred in this judicial district, where plaintiff is employed.

## Statement Of The Case

### The Agency's Denial of Reasonable Accommodation

8.)     Plaintiff, Janet L. Schmidt, has been employed as a Pension Law Specialist with EBSA since approximately June of 1996. Ms. Schmidt is an attorney who holds L.L.M. degrees in Taxation and Estate Planning as well as a certificate in Employee Benefits Law.

9.)     In approximately June of 2001, Ms. Schmidt was diagnosed with severe, permanent adhesive disease of the small and large intestines, the symptoms of which include gastrointestinal problems such as chronic and uncontrollable diarrhea, and severe abdominal pain which is exacerbated by motion and minimal exertion. Due to this condition, which prevents Ms. Schmidt from working in a public office setting due to her frequent and uncontrollable urges

to discharge her bowels, as well as her need to take measures to lessen her pain, plaintiff requested reasonable accommodation to be able to work from home five days per week ("Full Flexiplace Accommodation"), with flexible hours during the day, evenings and weekends, if necessary, in order to allow her to work a full 40 hour work week.

10.)     During the year that her request for reasonable accommodation was under review by the agency, Ms. Schmidt submitted letters from her gynecologist, a pain management specialist, the Chairman of Fertility and Reproductive Medicine at the University of Pennsylvania, and the Co-Chairman of Digestive Diseases at the University of Pennsylvania; had at least two of her doctors speak to the Public Health Service doctor appointed by the agency to review her accommodation request; signed waivers allowing the Public Health Service doctor to speak with all of her medical providers; and agreed to the agency's demand that she submit to a gynecological exam by a doctor hired by DOL.

11.)     In June of 2002, after much wrangling with the agency over the terms of the accommodation, Ms. Schmidt's request for Full Flexiplace Accommodation was approved by her then first-level supervisor, Emmett "Fil" Williams.  She was allowed to work from home 5 days per week, using evening and weekend hours as necessary to complete a 40 hour work week. During the long delay between her request for accommodation and the agency's approval of it, Ms. Schmidt lost almost one year's salary.

12.)     In approximately January of 2004, Mr. Williams asked Ms. Schmidt to provide a report from her doctor in support of her continuing need for Full Flexiplace Accommodation, and indicated that a doctor's report summarizing her medical condition would suffice.   In response, Ms. Schmidt provided a letter from her gastroenterologist who is the Co-Chairman of Digestive Diseases at the University of Pennsylvania.

13.)    In approximately April of 2004, Eric Raps replaced Mr. Williams as Ms. Schmidt's first-level supervisor.

14.)    Shortly thereafter, in May of 2004, Mr. Raps informed Ms. Schmidt that the medical information she had provided was insufficient and demanded additional, specific information regarding the nature and description of her medical examination as well as the laboratory tests performed by her doctor that were relied upon for his diagnosis.

15.)    Because the medical examination Ms. Schmidt had undergone included invasive and embarrassing procedures, such as pelvic and rectal exams, and because the agency had disseminated a medical report of hers without cause in violation of the Privacy Act, 5 U.S.C. §552a, Ms. Schmidt was wary of providing this sensitive personal medical information to her direct supervisor.  Accordingly, either herself or through her legal representatives, Ms. Schmidt asked the agency to engage in the interactive accommodation process mandated by the Rehabilitation Act, part of which would include clarifying why her doctor's report was insufficient, what additional information was needed, and who could receive that information. Mr. Raps failed to respond to this request.

16.)    In June of 2004, Mr. Raps informed Ms. Schmidt that her previously approved Full Flexiplace Accommodation supposedly did not include working flexible hours, which was false, and required her to begin working core hours between 10 a.m. and 3 p.m. even though she was working from home on Flexiplace.  As a result of this change, Ms. Schmidt began to lose pay because she was physically unable to work 40 hours per week without the ability to work nights and weekends – an accommodation the agency had made since 2002 without undue hardship.

17.)    Over the next two months, Ms. Schmidt, through her counsel, attempted several times to engage the agency in the interactive process, and asked the agency to provide the authority on which Mr. Raps based his demand for the details of Ms. Schmidt's medical examination.  The agency's only response was to reiterate its demand for the information without addressing Ms. Schmidt's privacy concerns.

18.)    On August 2, 2004, in an attempt to obtain accommodation, Ms. Schmidt had no choice but to provide an un-redacted copy of the medical report to Mr. Raps, and sought an extension of time to provide the more detailed medical records requested by Mr. Raps.  Ms. Schmidt's counsel again objected to providing this information to Mr. Raps, citing EEOC guidance on reasonable accommodation.

19.)    On August 4, 2004, on behalf of the agency, Mr. Raps discontinued Ms. Schmidt's Full Flexiplace Accommodation, retroactive to August 2, 2004, supposedly because he had not received the sensitive, highly personal medical information he had requested.  Ms. Schmidt was ordered to report to work at the DOL Headquarters building, which she was unable to do due to her disability.

20.)    Ms. Schmidt provided the medical records to the Solicitor's Office for them to transmit to the Public Health Service.  She also provided the records to the DOL Civil Rights Center's Reasonable Accommodation Coordinator; however, the documents were returned by both the Solicitor's Office and the CRC.  The agency's actions in returning these records constituted another failure to engage in the interactive accommodation process in a timely fashion, violated agency procedure, and served no purpose other than preventing Ms. Schmidt from obtaining reasonable accommodation without needlessly releasing highly confidential medical records to her supervisors.

21.)     On September 10, 2004, on behalf of the agency, Mr. Raps placed Ms. Schmidt on leave without pay, supposedly because he had not received the medical records he had requested.  On September 14, 2004, Mr. Raps placed Ms. Schmidt in absent without leave (AWOL) status for the same alleged reason.

22.)     On September 20, 2004, Ms. Schmidt, under duress, submitted the full, un-redacted medical report, including the details of her medical examination, to Mr. Raps, at which point he removed Ms. Schmidt from AWOL and temporarily re-activated her Full Flexiplace Accommodation.

23.)     On November 24, 2004, Dr. Neal Presant, the Public Health Service doctor who reviewed Ms. Schmidt's medical information for the agency, issued a report in which he found that Ms. Schmidt suffers from a physical impairment that substantially limits her life activities, and that it would be "impossible" for her to commute to work at DOL on a full-time basis.  Dr. Presant concluded that she "could probably work at some times" in the DOL Headquarters building, but that such periods would be unpredictable.  The agency did not share this report with Ms. Schmidt until nearly two months later, *after* Ms. Schmidt's supervisors engaged in an ex parte teleconference with Dr. Presant on December 16, 2004.

24.)     During that call, Mr. Raps asked Dr. Presant whether Ms. Schmidt could be physically present at the DOL building 20 hours per week.  Dr. Presant allegedly responded that "20 hours is a bit much but 10 [to] 15 hours is worth trying."  Neither Ms. Schmidt nor her doctor was included in the conference call to correct this misinformation.

25.)     On January 12, 2005, on behalf of the agency, Mr. Raps revoked Ms. Schmidt's Full Flexiplace Accommodation and required her to begin reporting to the DOL building 15 hours per week starting on January 25, 2005.

26.)     In response, Ms. Schmidt submitted a letter from her doctor stating that she would not physically be able to work at the building, and asked for her Full Flexiplace Accommodation to be restored while Mr. Raps considered her doctor's letter.  Rather than respond to it directly, Mr. Raps treated the letter from Ms. Schmidt's doctor letter like a new request for accommodation, rejected it, and demanded a new medical report, including a new description of the pelvic exam.

27.)     On behalf of the agency, Mr. Raps then denied without explanation the request of Ms. Schmidt's doctor that she be temporarily afforded a Full Flexiplace Accommodation, and instead instructed Ms. Schmidt to take leave without pay for the 15 hours per week that she was required to report to the office.

28.)     After again objecting to providing her medical records to Mr. Raps, in March of 2005, Ms. Schmidt was forced to submit the new medical report from her doctor, which included highly personal details of the medical examination of her vagina and rectum to Mr. Raps.

29.)     On May 25, 2005, on behalf of the agency, Mr. Raps again limited Ms. Schmidt's previous Full Flexiplace Accommodation.   Although Mr. Raps purported to restore Ms. Schmidt's ability to work flexible hours from home, he conditioned Ms. Schmidt's ability to do so upon satisfying requirements that she is unable to meet, for example obtaining advance permission to work outside of core hours even though Ms. Schmidt's disability unpredictably limits bowel function and causes extreme pain.  Furthermore, the agency failed to provide the equipment necessary for Ms. Schmidt to work from home until approximately September of 2005.  Despite a slight modification by Mr. Raps since that time, Ms. Schmidt has not been able to earn her full salary due to his unlawful restrictions on a Full Flexiplace Accommodation.

## Other Discrimination and Retaliation by the Agency

30.)    As described in paragraphs 9 through 29, above, throughout 2004, Mr. Raps continuously interfered with Ms. Schmidt's ability to receive the reasonable, Full Flexiplace Accommodation she was first granted in 2002.  In order to seek redress for this discriminatory and retaliatory treatment, Ms. Schmidt began the administrative complaints process in approximately May of 2004, and subsequently filed a formal EEO complaint and several amendments thereto.

31.)    After initiating the administrative EEO complaints process, Ms. Schmidt received her performance rating for Fiscal Year ("FY") 2004 in which she was rated as "effective" rather than "highly effective" or "exemplary."  Eric Raps was the rating official and Ivan Strasfeld was the reviewing official for this appraisal.

32.)    This appraisal marked the first time in Ms. Schmidt's career with DOL in which she received a rating of less than "highly effective."  It was largely based on criticism of Ms. Schmidt's work product that was caused by the agency's failure to provide Ms. Schmidt with reasonable accommodation, including the appropriate tools to complete her work from home.

33.)    As a result of the "effective" rating, Ms. Schmidt was ineligible to receive the FY 2004 bonus, which was more than $1,000.00.

## Plaintiff's Protected Activities And
## Exhaustion Of Administrative Remedies

34.)    Ms. Schmidt engaged in EEO activity protected under the Rehabilitation Act when she sought reasonable accommodation from defendant beginning in June of 2001; and when she provided medical and other evidence in an attempt to continue her accommodation and to prevent the agency from revoking her accommodation throughout 2004 and 2005.

35.)     Ms. Schmidt also engaged in EEO activity protected under the Rehabilitation Act and/or Title VII when she filed an EEO complaint of discrimination and retaliation in 2000, and engaging in other protected EEO activity on her own behalf since then; and providing evidence in support of a co-worker's union grievance against EBSA management beginning in 1998, and continuing thereafter.

36.)     No later than May 19, 2004, Ms. Schmidt initiated the EEO administrative process in this case and alleged, among other matters, that the agency had engaged in discrimination and retaliation against her by failing to reasonably accommodate her disability and by interfering with her ability to continue receiving reasonable accommodation.

37.)     In her informal complaint, Ms. Schmidt alleged, among other things, that on an ongoing basis beginning in April of 2004, the agency had inappropriately charged her with leave without pay in violation of her reasonable accommodation which allowed her to work flexible hours from home; that the agency had inappropriately demanded highly personal, sensitive medical documentation in an effort to prevent her from continuing to receive the reasonable accommodation she was granted in 2002; and that the agency had failed to reasonably accommodate her.

38.)     In her formal complaint of discrimination and the amendments thereto, the informal administrative process that preceded them, and the investigation that followed, Ms. Schmidt timely challenged all of the employment actions that are the subjects of this action.

39.)     On November 29, 2005, Ms. Schmidt requested a hearing before the Equal Employment Opportunity Commission over the administrative complaint that forms the basis of this action (No. ARB05075/CRC0411011).   Before the close of discovery in that case, Ms. Schmidt's case was remanded to the agency for a Final Agency Decision.   On September 28,

2006, the agency issued its decision and found against Ms. Schmidt.  Ms. Schmidt timely

appealed that decision to the Office of Federal Operations ("OFO").  As of this date, the OFO

has not ruled on Ms. Schmidt's appeal.  Accordingly, plaintiff has exhausted her administrative

remedies.

**Count I**
**Failure to Reasonably Accommodate**
**(<u>Interference With the Interactive Accommodation Process</u>)**

40.)    Plaintiff incorporates the allegations contained in paragraphs 1 through 39 above,

as though fully set forth here.

41.)    Plaintiff is an individual with a disability having a record of a permanent physical

impairment, and is regarded by defendant as having a permanent physical impairment,

specifically severe adhesive disease of the small and large intestines.

42.)    Plaintiff's disability substantially limits one or more life activities in the following

ways, among others:  weakening her physically; causing chronic diarrhea, loss of bowel control,

and severe pain, which is exacerbated by movement.  This disease substantially limits plaintiff's

ability to care for herself and her home, to walk or exert herself, or to be in public places, away

from a bathroom.  The diarrhea and pain also substantially limit her ability to sleep.

43.)    Plaintiff is a qualified individual with a disability because, with or without

reasonable accommodation, she is able to perform the essential functions of the positions she has

encumbered with EBSA.

44.)    At all times relevant to this Complaint, plaintiff's disability was known to

defendant.

45.)    In approximately June of 2001, plaintiff requested that defendant reasonably

accommodate her disability by permitting her to work from home five days a week and to have

11

flexible working hours during the day, nights, and on weekends in order to complete a 40 hour work week. Defendant granted this Full Flexiplace Accommodation, which posed no undue hardship on the agency, in June of 2002.

46.)     Beginning in May of 2004 and continuing through May of 2005, defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et seq., in numerous ways, including:  refusing to engage in the interactive accommodation process in timely fashion; by failing to accord plaintiff reasonable accommodation in a timely manner; demanding without cause that plaintiff produce sensitive, highly personal medical records documenting her pelvic and rectal examination by her doctor to her first-level supervisor as a condition of engaging in the interactive accommodation process and continuing to receive her previously-approved Full Flexiplace Accommodation that allowed and would allow her to work flexible hours during the day, nights, and on weekends in order to achieve a 40 hour work week; denying, limiting, and interfering with a Full Flexiplace Accommodation for plaintiff; by revoking her reasonable, Full Flexiplace Accommodation in its entirety; forcing her to take leave without pay and/or placing her on absent without leave status; and by requiring plaintiff to physically report to DOL headquarters 15 hours per week.

47.)     Defendant's violation of the Rehabilitation Act caused plaintiff to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count II**
**Failure to Reasonably Accommodate**
**(<u>Revocation of Flexible Schedule in June 2004</u>)**

48.)    Plaintiff incorporates the allegations contained in paragraphs 1 through 47 above, as though fully set forth here.

49.)    Plaintiff is an individual with a disability having a record of a permanent physical impairment, and is regarded by defendant as having a permanent physical impairment, specifically severe adhesive disease of the small and large intestines.

50.)    Plaintiff's disability substantially limits one or more life activities in the following ways, among others:  weakening her physically; causing chronic diarrhea, loss of bowel control, and severe pain, which is exacerbated by movement.  This disease substantially limits plaintiff's ability to care for herself and her home, to walk or exert herself, or to be in public places, away from a bathroom.  The diarrhea and pain also substantially limit her ability to sleep.

51.)    Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the positions she has encumbered with EBSA.

52.)    At all times relevant to this Complaint, plaintiff's disability was known to defendant.

53.)    In approximately June of 2001, plaintiff requested that defendant reasonably accommodate her disability by permitting her to work from home five days a week and to have flexible working hours during the day, nights, and on weekends in order to complete a 40 hour work week.  Defendant granted this Full Flexiplace Accommodation, which posed no undue hardship on the agency, in June of 2002.

54.)    Beginning in June of 2004 and continuing through approximately September 20, 2004, defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et seq., by revoking plaintiff's reasonable accommodation which allowed her to work flexible hours during the day, nights, and weekends in order to complete a 40 hour work week, and by requiring her to work during the core hours of 10 a.m. to 3 p.m., Monday through Friday.  Because plaintiff's disability requires that she visit the bathroom or take time out for pain management during those core hours, plaintiff was unable to work a 40 hour work week after her Full Flexiplace Accommodation was revoked.

55.)    Defendant's violation of the Rehabilitation Act caused plaintiff to lose salary and to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### Count III
### Failure to Reasonably Accommodate
### (Revocation of Reasonable Accommodation and
### Placement in Non-Pay Status in August 2004)

56.)    Plaintiff incorporates the allegations contained in paragraphs 1 through 55 above, as though fully set forth here.

57.)    Plaintiff is an individual with a disability having a record of a permanent physical impairment, and is regarded by defendant as having a permanent physical impairment, specifically severe adhesive disease of the small and large intestines.

58.)    Plaintiff's disability substantially limits one or more life activities in the following ways, among others:  weakening her physically; causing chronic diarrhea, loss of bowel control, and severe pain, which is exacerbated by movement.  This disease substantially limits plaintiff's ability to care for herself and her home, to walk or exert herself, or to be in public places, away from a bathroom.  The diarrhea and pain also substantially limit her ability to sleep.

59.)     Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the positions she has encumbered with EBSA.

60.)     At all times relevant to this Complaint, plaintiff's disability was known to defendant.

61.)     In approximately June of 2001, plaintiff requested that defendant reasonably accommodate her disability by permitting her to work from home five days a week and to have flexible working hours during the day, nights, and on weekends in order to complete a 40 hour work week.  Defendant granted this Full Flexiplace Accommodation, which posed no undue hardship on the agency, in June of 2002.

62.)     From approximately August 2, 2004 and continuing through September 20, 2004, defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et. seq., by revoking in its entirety the Full Flexiplace Accommodation which plaintiff had been granted in 2002, which allowed her to work from home 5 days per week and to work flexible hours during the day, nights, and weekends in order to complete a 40 hour work week.  During this time period, defendant charged plaintiff as being on leave without pay or in absent without leave status because she was unable to physically report to work at DOL headquarters due to her disability.

63.)     Defendant's violation of the Rehabilitation Act caused plaintiff to lose salary and to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count IV**
**Failure to Reasonably Accommodate**
**(Revocation of Reasonable Accommodation, Denial of Full Flexiplace Accommodation and Placement in Non-Pay Status 2005 Onward)**

64.)    Plaintiff incorporates the allegations contained in paragraphs 1 through 63 above, as though fully set forth here.

65.)    Plaintiff is an individual with a disability having a record of a permanent physical impairment, and is regarded by defendant as having a permanent physical impairment, specifically severe adhesive disease of the small and large intestines.

66.)    Plaintiff's disability substantially limits one or more life activities in the following ways, among others:  weakening her physically; causing chronic diarrhea, loss of bowel control, and severe pain, which is exacerbated by movement.  This disease substantially limits plaintiff's ability to care for herself and her home, to walk or exert herself, or to be in public places, away from a bathroom.  The diarrhea and pain also substantially limit her ability to sleep.

67.)    Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the positions she has encumbered with EBSA.

68.)    At all times relevant to this Complaint, plaintiff's disability was known to defendant.

69.)    In approximately June of 2001, plaintiff requested that defendant reasonably accommodate her disability by permitting her to work from home five days a week and to have flexible working hours during the day, nights, and on weekends in order to complete a 40 hour work week.  Defendant granted this Full Flexiplace Accommodation, which posed no undue hardship on the agency, in June of 2002.

70.)    Beginning on January 25, 2005 and continuing through the present, defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et. seq., by variously requiring plaintiff to report to the DOL headquarters office 15 hours per week, despite the fact that plaintiff was unable to do so due to her disability; revoking plaintiff's reasonable, Full Flexiplace Accommodation which allowed her to work flexible hours during the day, nights, and weekends in order to complete a 40 hour work week; requiring her to work during the core hours of 10 a.m. to 3 p.m., Monday through Friday; repeatedly shifting and ultimately limiting and conditioning Ms. Schmidt's accommodation in such a way that prevents Ms. Schmidt from earning her full salary; and placing plaintiff in a non-pay status when she could not physically report to work.  Because plaintiff's disability requires that she visit the bathroom or take time out for pain management during those core hours, plaintiff has been unable to work a 40 hour work week since her flexible hours accommodation was revoked.

71.)    Defendant's violation of the Rehabilitation Act caused plaintiff to lose salary and to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### Count V
### Retaliation – Rehabilitation Act

72.)    Plaintiff incorporates the allegations contained in paragraphs 1 through 71 above, as though fully set forth here.

73.)    Plaintiff engaged in protected activity under the Rehabilitation Act when she sought reasonable accommodation from defendant in June of 2001; when she engaged in the interactive accommodation process and attempted to engage in the interactive accommodation process with defendant; when she sought to prevent defendant from revoking some or all of that accommodation beginning in May of 2004; when she participated in the administrative EEO

complaints process to enforce her rights under the Rehabilitation Act; and by having engaged in protected EEO activity under the Rehabilitation Act continuously since May of 2004.

74.)    Plaintiff is an individual with a disability having a record of a permanent physical impairment, and is regarded by defendant as having a permanent physical impairment, specifically severe adhesive disease of the small and large intestines.

75.)    Plaintiff's disability substantially limits one or more life activities in the following ways, among others:  weakening her physically; causing chronic diarrhea, loss of bowel control, and severe pain, which is exacerbated by movement.  This disease substantially limits plaintiff's ability to care for herself and her home, to walk or exert herself, or to be in public places, away from a bathroom.  The diarrhea and pain also substantially limit her ability to sleep.

76.)    Plaintiff is a qualified individual with a disability because, with or without reasonable accommodation, she is able to perform the essential functions of the positions she has encumbered with EBSA.

77.)    At all times relevant to this Complaint, plaintiff's disability was known to defendant.

78.)    Defendant retaliated against plaintiff on account of her protected activities in numerous ways, including:  refusing to engage in the interactive accommodation process in timely fashion; failing to accord plaintiff reasonable accommodation in a timely manner; denying, limiting, and interfering with a Full Flexiplace Accommodation for plaintiff; requiring her to submit highly sensitive and personal medical records to her first-level supervisor as a condition of receiving her previously-approved Full Flexiplace Accommodation and engaging in the interactive accommodation process; revoking the reasonable, Full Flexiplace Accommodation that allowed her to work flexible hours during the day, nights, and on weekends

in order to achieve a 40 hour work week; revoking her reasonable, Full Flexiplace

Accommodation in its entirety; forcing her to take leave without pay and/or placing her on

absent without leave status; requiring plaintiff to physically report to DOL headquarters 15 hours

per week; and issuing plaintiff a performance rating for FY 2004 in which she was rated as

"effective" rather than "highly effective" or "exemplary," thereby damaging plaintiff's career

and professional reputation, and causing her to be ineligible to receive a performance bonus in

excess of $1,000.

79.)    Defendant's violation of the Rehabilitation Act has harmed plaintiff's

professional reputation and caused her to suffer physical and emotional pain, embarrassment,

humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**Count VI**
**Retaliation – Title VII**

80.)    Plaintiff incorporates the allegations contained in paragraphs 1 through 79 above,

as though fully set forth here.

81.)    Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3)) when

she supported a co-worker's union grievance which alleged discrimination in 1998; when she

filed her own EEO complaint of discrimination and retaliation in 2000; and by engaging in

protected EEO activity repeatedly since then.

82.)    Defendant retaliated against plaintiff on account of her protected activities in

numerous ways, including:  refusing to engage in the interactive accommodation process in

timely fashion; failing to accord plaintiff reasonable accommodation in a timely manner;

denying, limiting, and interfering with a Full Flexiplace Accommodation for plaintiff; requiring

her to submit highly sensitive and personal medical records to her first-level supervisor as a

condition of receiving her previously-approved Full Flexiplace Accommodation and engaging in the interactive accommodation process; revoking the reasonable, Full Flexiplace Accommodation that allowed her to work flexible hours during the day, nights, and on weekends in order to achieve a 40 hour work week; revoking her reasonable, Full Flexiplace Accommodation in its entirety; forcing her to take leave without pay and/or placing her on absent without leave status; requiring plaintiff to physically report to DOL headquarters 15 hours per week; and issuing plaintiff a performance rating for FY 2004 in which she was rated as "effective" rather than "highly effective" or "exemplary," thereby damaging plaintiff's career and professional reputation, and causing her to be ineligible to receive a performance bonus in excess of $1,000.

83.)     Defendant's violation of Title VII has harmed plaintiff's professional reputation and caused her to suffer physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, plaintiff Janet L. Schmidt respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.     An Order declaring that defendant violated plaintiff's civil rights under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§791 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

B.     An injunction requiring the agency to reasonably accommodate plaintiff by allowing her to work from home full-time; to work evening and weekend hours, when necessary and without the need to seek approval each time, in order to complete her work and achieve a 40 hour work week; and to report to a non-hostile supervisor.

C.    Backpay for the leave without pay and/or AWOL plaintiff was required to take as a result of the agency's failure to reasonably accommodate her;

D.    Record correction to change her performance appraisal for Fiscal Year 2004 from "effective" to "highly effective" plus backpay and bonuses commensurate with the higher rating;

E.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the physical and emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of future career opportunities, loss of professional reputation, and loss of enjoyment of life caused by his termination;

F.    Pre- and post-judgment interest;

G.    The attorneys' fees and costs incurred by plaintiff; and

H.    Such    other    relief    as    may    be    just    and    appropriate.

**Jury Demand**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

_____//s//_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100

_____//s//_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 200
Washington, D.C.  20004
Telephone: (202) 393-8200

Counsel for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Janet L. Schmidt | Elaine L. Chao, Secretary of Labor |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert C. Seldon, Esq.; Molly E. Buie, Esq.
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200

Case: 1:07-cv-02216
Assigned To : Huvelle, Ellen S.
Assign. Date : 12/7/2007
Description: Employ. Discrim.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- O 3 Federal Question (U.S. Government Not a Party)
- ⊙ 2 U.S. Government Defendant
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**O A. Antitrust**
- ☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)    OR    O F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/PRIVACY ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Discrimination, retaliation, and failure to accommodate in federal employment under Title VII, 42 USC 2000e-16 and Rehabilitation Act, 29 USC 791

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    ☐    **DEMAND $** 300,000.00    Check YES only if demanded in complaint    **JURY DEMAND:**    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  December 7, 2007    SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.