UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANET L. SCHMIDT,

Plaintiff,

v.

HILDA L. SOLIS, Secretary,
U.S. Dept. of Labor,

Defendant.

Civil Action No. 07-2216 (JMF)

REDACTED

MEMORANDUM OPINION

This is an action by Janet L. Schmidt ("Schmidt") against the Secretary of Labor,[1] premised primarily on the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq*.[2] Before me at this time is defendant's Motion for Summary Judgment ("Mot.") [#25].

I. INTRODUCTION

Schmidt is an attorney who was employed with the Department of Labor from February 1994 to July 2008,[3] with her final position being as a Pension Law Specialist in one of the Labor divisions. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Response") [#39-2] at ¶ 1.[4]

---

[1] The defendant is the Secretary of Labor, who is sued in her official capacity. I will refer to the defendant as "Labor."

[2] All references to the United States Code or the Code of Federal Regulations are to the electronic versions in Westlaw or Lexis.

[3] The last day of work for the defendant was in 2006, but she was retired as disabled in 2008. See Response at ¶¶ 1, 14.

[4] Citations to the Response are to those facts that are not disputed.

[6]

In March 2002, Schmidt's then-supervisor, Emmet "Fil" Williams, granted her an accommodation that permitted her to work from her home on a full-time, flexible schedule. Response at ¶ 16. Unlike the traditional "nine to fiver" who is expected to be at the work site at a particular time and to remain there, doing her work, until quitting time, Schmidt pieced together an eight-hour day from her home and worked when she could, irrespective of time of day. Id.

Beginning in May 2004, Schmidt's new supervisor, Eric Raps, began a process of re-evaluating the accommodation that Williams had allowed. Id. at ¶ 33. In her claim, Schmidt attacks that process and the conclusions Raps made as violative of her privacy and as unreasonably delayed. Complaint [#1], Count I, ¶¶ 46-47. She also charges that it caused her to lose compensation to which she was entitled. Id.

Labor, however, seeks summary judgment on the basis that Schmidt is not even a

---

[5] While Labor did not reply to plaintiff's statement of genuine issues with specificity, there is no indication that the statements concerning the general facts of plaintiff's medical condition are contested.

[6] The details of plaintiff's medical condition will be redacted in the public filing of this Memorandum Opinion.

qualified individual who can complain about a violation of the Rehabilitation Act; in the alternative, Labor argues that if she could make such a complaint, the process that Raps started and completed was fair, and was actually obstructed by Schmidt's actions. Mot. at 4-5. Moreover, Labor argues that the accommodation Raps ultimately gave her was reasonable as a matter of law, in that no jury could find it unreasonable.[7] Mot. at 39-40.

## II. WHETHER PLAINTIFF'S REQUESTED ACCOMMODATION WAS REASONABLE IS AN ISSUE OF MATERIAL FACT

In Breen v. Department of Transportation, 282 F.3d 839 (D.C. Cir. 2002), the court of appeals explained the protection afforded disabled federal employees as follows:

> The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Act states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [certain provisions of] the Americans with Disabilities Act [ADA]." 29 U.S.C. § 794(d). The ADA, in turn, bars discrimination against a "qualified individual with a disability . . . in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8); see 29 C.F.R. § 1614.203(a)(6) (EEOC Rehabilitation Act regulation). Accordingly, an individual with a disability is "qualified" if he or she can perform the essential functions of the position with a reasonable accommodation. Carr v. Reno, 23 F.3d 525, 529 (D.C. Cir.1994). The ADA further defines the term "reasonable accommodation" to include "job restructuring [and] part-

---

[7] Labor also argues that Schmidt's retirement on disability precludes her Rehabilitation Act claim, but I will allow supplemental briefing on that issue. See *infra*. Additionally, I will grant summary judgment to defendant on plaintiff's Title VII retaliation claim.

3

> time or modified work schedules." 42 U.S.C. § 12111(9);
> see 29 C.F.R. § 1614.203(c)(2).

Id. at 841 (footnote omitted).

The EEOC regulations indicate that the Federal Government is to be a "model employer of individuals with disabilities" (29 C.F.R. § 1614.203(a)), and, as the decision in Breen explains in the passage above, the standards applied under the ADA are to be applied in the interpretation of the Rehabilitation Act. See 29 C.F.R. § 1614.203(b). It would therefore follow that a person can be a qualified individual, permitted to complain of a violation of the Rehabilitation Act, if she can be reasonably accommodated by a part-time or modified work schedule, as Schmidt was. Labor, however, insists that a modified work schedule is one thing, but that Schmidt's insistence that she be allowed to work at home at whatever time of the day she saw fit cannot possibly mean that she was nevertheless qualified for her position. Mot. at 39-40. Surely, Labor says, an employer does not have to tolerate "an inability to maintain any predictable work schedule." Id. at 40. To the contrary, Labor argues, "an employee's inability to maintain a regular and predictable work schedule (an essential element of any government job) places that employee outside the accommodation provisions of the Rehabilitation Act." Id. at 39 (citing Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir.1994)). Oddly, Labor makes this argument even though Williams approved a work schedule that permitted Schmidt to work nights, weekends, and irregular hours on any given day in order to cobble together eighty hours per pay period, although it was impossible to predict at the beginning of the week what hours Schmidt would work that week. Id. at 15.

In any event, and despite Labor's argument, the inability to maintain a regular and predictable work schedule does not in itself disqualify a federal employee from seeking

4

an irregular and unpredictable work schedule as an accommodation if such a schedule is otherwise a reasonable accommodation. It must be remembered that, while no one could predict at the beginning of a pay period how many hours Schmidt would work, she was required to work eighty hours in that pay period, and to take leave for any hours she could not work due to her illness. In that sense, she was treated like every other employee; no one can predict when they will get sick at the beginning of the pay period, and they must take sick leave if they do. The only difference between Schmidt and other employees is that they are expected at their work station at their starting time and are permitted to leave at their quitting time. Schmidt was not so fortunate, but, while she may have started earlier, worked sporadically during the day when she could, and then worked in the evenings and weekends to make up the difference, she was still required to work eighty hours in the pay period and to take sick leave if she could not.

If Schmidt's working at home at unusual hours disqualified her from seeking an accommodation to do just that, then what I would call the "nine to fiver" paradigm would become the exclusive way in which federal employees may work. That, in turn, would require reading the Rehabilitation Act as not including any obligation to consider working at home and flexible time, which would be inconsistent with the regulatory requirement that the federal government be a model employer of the disabled, compelled to consider "job restructuring and part-time or modified work schedules." Breen, 282 F.3d at 841 (quoting the ADA, 42 U.S.C. § 12111(9)). The question is whether the accommodation Schmidt sought is reasonable, not whether her inability to maintain a predictable and regular work schedule in itself disqualifies her from seeking that accommodation.

It is in this sense that this case is not like Carr, 23 F.3d 525, to which Labor equates it. To the contrary, Breen and Langon v. Department of Health & Human Services, 959 F.2d 1053 (D.C. Cir. 1992) are the controlling precedents.

In Carr, the plaintiff, a coding clerk in the United States Attorney's Office who suffered from dizziness and nausea that forced her to miss work without notice, wanted an "open-ended 'work when able' schedule." Carr, 23 F.3d at 531. However, she had to complete her work every day by 4 p.m. if the United States Attorney's Office was to fulfill an obligation it had. Id. at 529-30. That inexorable deadline compelled the conclusion that the accommodation she proposed—work when she could—would not have permitted her to perform the essential functions of her job.

The court of appeals distinguished Carr in Breen, a case in which the plaintiff disputed the claim that there was a similar deadline that would, as a matter of law, preclude the accommodation she sought for her psychiatric disorders, particularly her obsessive-compulsive disorder. Breen, 282 F.3d at 843. Specifically, that accommodation included allowing her to work an eighty-hour pay period, while also allowing her to work past normal business hours in a flexible schedule (*i.e.*, working nine hours every day in exchange for one day off per pay period). Id. at 840.

The court of appeals indicated that the case was not controlled by Carr because there was no claim of an inexorable daily deadline that had to be met. Id. at 843. The court further concluded that plaintiff was not thereby disqualified from seeking the accommodation she did. Id. On the contrary, by insisting that there was no such deadline, the court held that plaintiff had created a genuine issue of material fact as to the reasonableness of the accommodation she sought. Id.

6

In so concluding, the court of appeals indicated that "the precedent that is relevant is not Carr but Langon v. Dept. of Health and Human Servs., 959 F.2d 1053 (D.C. Cir. 1992)." Id. As the court explained, the plaintiff in Langon, stricken with multiple sclerosis, sought to work at home, but the agency refused because it concluded that her position did not lend itself to her working at home. When, however, plaintiff testified and explained the reasons why she contested that conclusion, she created a genuine issue as to whether she was a qualified individual who could do her job if she could be accommodated by being permitted to work at home. Id. (citing Langon, 959 F.2d at 1061).

For the purposes of this case, the crucial aspect of Langon and Breen is that they reject any reading of Carr that would serve to automatically disqualify a disabled individual from seeking an accommodation that includes working at home or at irregular hours. Labor's argument to the contrary therefore fails.

## III. THE PARTIES MUST ADDRESS THE SIGNIFICANCE OF SOLOMON V. VILSACK

The parties addressed the significance of plaintiff's disability retirement prior to Solomon v. Vilsack, 628 F.3d 555 (D.C. Cir. 2010). In that case, the court of appeals held that "recipients of FERS disability benefits are not presumptively barred from asserting Rehabilitation Act claims." Id. at 565.

Nevertheless, inquiry into the inconsistency between statements made in the application for FERS disability benefits and a claim that a person was qualified for employment if reasonably accommodated is necessary. Id. at 565-66. To provide the parties a fair opportunity to address that most significant decision in the context of this case, I will therefore deny without prejudice Labor's motion insofar as it is premised on

7

its claim that a reasonable person would have to conclude that Labor complied with the Rehabilitation Act, and order it to supplement its motion with a memorandum of law addressed to the significance of the Solomon case. Plaintiff will be permitted an opportunity to respond, and Labor to reply.

## IV. PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED

Plaintiff claims that Labor's actions with reference to her request for accommodation were done in retaliation for her engaging in protected activity under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16, when she (a) supported a co-worker's union grievance, which alleged discrimination, in 1998; (b) filed her own EEO complaint of discrimination and retaliation in 2000; and (c) "engag[ed] in protected EEO activity repeatedly since then." Complaint, Count VI, ¶ 81. As to the latter allegation, she does not specify the activity in which she engaged, nor when she engaged in it.

Raps, the decision-maker, however, testified that he had no knowledge of any of Schmidt's prior Title VII activity. Response at ¶ 124. While Schmidt pointed to two instances of engaging in activity claimed to be protected by Title VII (Id. at ¶ 122), she produced no evidence whatsoever that Raps was aware of her Title VII activity, or that his explanation for the decisions he made was pretextual, and that the real reason was her prior Title VII activity. She was obliged to produce sufficient evidence for a reasonable jury to find that Raps' actions were a pretext for retaliatory action. See Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). She produced none, however, and conceded that she had produced no evidence that Raps was aware of her Title VII activity. Response at ¶ 123. Labor is therefore entitled to summary judgment on this claim. See

Calhoun v. Johnson, 09-CV-5315, ___ F.3d ___, 2011 WL 192497, *2 (D. C. Cir. 2011);

Pardo-Kronemann v. Donovan, 601 F.3d 599, 605 (D.C. Cir. 2010).

## V. CONCLUSION

Labor is not entitled to summary judgment on the grounds that Schmidt's requested accommodations are unreasonable as a matter of law, barring her from being a "qualified individual" under the Rehabilitation Act, but it is entitled to summary judgment on her Title VII claim. The remainder of Labor's motion for summary judgment is denied without prejudice pending the briefing I have ordered.

A separate Order accompanies this Memorandum Opinion.

John M. Facciola

Digitally signed by John M. Facciola
DN: c=US, st=DC, ou=District of Columbia, email=John_M._Facciola@dcd.uscourts.gov, o=U.S. District Court, District of Columbia, cn=John M. Facciola
Date: 2011.03.01 10:18:28 -05'00'

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE